In re Sharon E. GRAHAM and Cameron E. Graham, Jr., Jointly and d/b/a Graham Catering and/or Graham Catering Company, Debtors.

PETRO BANK, N.A., Movant,

v.

Sharon E. GRAHAM and Cameron E. Graham, Jr., Jointly and d/b/a Graham Catering and/or Graham Catering Company, Respondents.

Bankruptcy No. 86–000560–H3–7.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Sept. 10, 1986.

Axelrod, Smith, Komiss & Kirshbaum, Jerry L. Schutza, Houston, Tex., for debtor.

Rose & Ryman, Nancy Hesse-Hamren, Houston, Tex., for movant.

## MEMORANDUM OPINION
## AND ORDER

EDWARD J. RYAN, Bankruptcy Judge.

On January 16, 1986, Sharon C. Graham and Cameron E. Graham, Jr., jointly, and doing business as Graham Catering Company and Graham Catering, ("debtors"), filed their voluntary petition for relief under Chapter 7 of the Code. The debtors elected to take Texas statutory exemptions under Chapter 42 of the Texas Property Code Annotated.

On April 1, 1986, Petro Bank, N.A., a secured creditor of the debtors, filed an application entitled "Motion for Termination of Automatic Stay and Demand for Adequate Protection", to lift the 11 U.S.C.

§ 362 stay then in effect, as to its collateral. On June 13, 1986, the debtors responded by filing their counter-motion to avoid liens pursuant to 11 U.S.C. § 522(f) on the collateral, i.e., two automobiles.

Debtors argue the two vehicles are tools of their trade, and therefore exempt. This they urge, entitles them to avoidance of the Petro Bank, N.A. liens to the extent of the amount of the exemption.

Trial on this matter was had on the 2nd day of July, 1986.

*Background*:

On April 2, 1985, the debtors executed a non-possessory, non-purchase money note payable to Petro Bank, N.A. in the original principal amount of $50,000. On August 5, 1985, the debtors executed a second non-possessory, non-purchase money note, payable to Petro Bank, N.A. in the original principal amount of $10,050.45. As security for each of the two notes, the debtors used a 1979 Mercedes 450 Coupe and a 1970 Excalibur Roadster.[1] It is undisputed that Petro Bank properly perfected both security agreements.

The debtors acknowledge they lack equity in the collateral; on their "Schedule B2–Personal Property" attached to their voluntary petition for relief, they list the combined value of the two automobiles as $38,000,[2] but as of January 16, 1986, they owed Petro Bank, N.A. $62,532.65 in principal and accrued interest on the two notes. The debtors admit that no offer of adequate protection as to either the Mercedes or the Excalibur has been made to Petro Bank, N.A.

The debtors argue that the luxury cars are tools of their catering enterprise and, therefore, exempt property and subject to lien avoidance under 11 U.S.C. § 522(f).

Petro Bank, N.A., contends that because the debtors elected to exempt property under Texas law, they cannot avoid a lien created by a non-possessory, non-purchase money security interest under 11 U.S.C. § 522(f). Furthermore, the bank claims that debtors cannot seek to avoid a lien on an automobile, i.e. the Excalibur, when it is not listed as exempt property on their schedules. Last, the Bank argues that the Mercedes and the Excalibur are not tools of the trade for a catering business.

[redacted] On "Schedule B4–Exempt Property" the debtors listed only the Mercedes and a van as their two automobile exemptions. Debtors did not list the Excalibur as exempt property; they cannot now claim it exempt. The debtor's motion to avoid the lien on the Excalibur is denied. Petro Bank, N.A. is entitled to the 1979 Excalibur Roadster.

*Discussion:*

[redacted] 11 U.S.C. § 541 provides that upon commencement of a case, all property of the debtor becomes property of the estate. However, once the debtor's property becomes a part of the estate, the debtor is entitled to exempt certain property.

[redacted] 11 U.S.C. 522(b) provides that debtors may either claim the federal "laundry list" exemptions listed in § 522(d) or, alternatively, claim exemptions provided for by applicable state law. Section 522(b)(1) permits the states to "opt out" of the § 522(d) federal "laundry list" exemptions, thereby removing a choice for the debtor and forcing resident debtors seeking exemptions, to rely solely on state law and federal common law exemptions. But unless a state enacts legislation foreclosing § 522(d) as an alternative list of exemptions, there exists an election between those exemptions listed in § 522 or applicable state exemptions.

[redacted] Texas allows the debtor a choice of either the federal "laundry list" exemp-

1. The debtors are currently in possession of the 450 SL Mercedes and allegedly use it for both business meetings and deliveries. The debtors, however, are not in possession of the Excalibur. When the debtors refused to pay for car repairs requested by them, the auto repair shop contacted Petro Bank, the secured lienholder, for payment; such was tendered and Petro Bank repossessed the Excalibur.

2. The Mercedes was valued at $18,000 and the Excalibur at $20,000.

**472**

tions under § 522(b) or state exemptions.[3] As previously noted, the debtors in this case chose state exemptions. The exemptions available under Texas law are found in Tex.Rev.Civ.Stat.Ann. Property Code Section 42.001 and 42.002, which provide:

"**Section 42.001. Personal Property Exemption.**

(a) Eligible personal property that is owned by a family and that has an aggregate fair market value of not more than $30,000 is exempt from attachment, execution, and seizure for the satisfaction of debts, except for encumbrances properly fixed on the property.

\* \* \* \* \* \*

(c) *The exemption provided in this section does not apply to a debt that is secured by a lien on the property or that is due for rents or advances from a landlord to the landlord's tenant.* (emphasis added)

**§ 42.002. Personal Property Eligible for Exemption.**

\* \* \* \* \* \*

(3) if reasonably necessary for the family or single adult:

\* \* \* \* \* \*

(B) tools, equipment, books, and apparatus, including a boat, used in a trade or profession.

\* \* \* \* \* \*"

■ Assuming *arguendo,* that the Mercedes is a tool of the trade, the Texas statute is specific in that it does not exempt property subject to a secured lien. In the case sub judice, the Mercedes is fully encumbered, and therefore, not exempt property under Texas statutory law. Because it is not exempt under state law, the Mercedes is not exempt property under § 522(b).

■ The debtors' reliance upon § 522(f)[4] is misplaced. The Code makes clear that the avoidance provisions available under § 522(f) are available to debtors seeking to avoid a lien only to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection § 522(b). Section 522(f) is therefore dependent upon whether a debtor may be legally entitled to an exemption under § 522(b). Section 522(f) is not a separate exemption statute.

The Fifth Circuit's two opinions in *Matter of Allen,*[5] 725 F.2d 290 (5th Cir.1984), and *Matter of McManus,*[6] 681 F.2d 353 (5th

---

**3.** Before 1984 a married couple could file a joint bankruptcy petition under § 522(m) opting both ways, i.e., the spouses could elect both. *Matter of Allen,* 725 F.2d 290, 292 (5th Cir.1984), citing *Matter of Cannady,* 653 F.2d 210 (5th Cir.1981). However, with the passage of the Bankruptcy Amendments And Federal Judgeship Act of 1984, this dual practice of one spouse selecting federal exemptions and the other the state exemptions, is no longer allowed.

**4.** Section 522 provides:

"(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of a debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is ...

(2) a non-possessory, non-purchase money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor...."

**5.** In *In Re Allen,* the Texas debtors had given the creditor a non-possessory, non-purchase money security interest in certain encumbered farming implements and tools of the trade and were trying to avoid the lien under § 522(f). The Fifth Circuit disallowed the lien avoidance on the encumbered property. The court reasoned "If one elects to use the Texas exemption statute, any property exempt under the statute is subject to the section (f) lien avoidance. The Texas statute is specific, it does not exempt property subject to a secured lien. Therefore, if one elects to claim under the Texas statute, the property would not be 522(b) exempt property and would not be exempt under the section (f) savings clause." *Id.* at 293.

**6.** In *McManus,* the creditor held a non-possessory non-purchase money security interest in debtors' household goods and furnishings. The debtors moved to avoid this lien under § 522(f). In looking at two Louisiana statutes dealing with exemptions, the court held the lien could

Cir.1982), rehearing denied, 689 F.2d 190, have addressed the question. Both cases held that § 522(f) is not a separate avoidance statute; it merely gives the debtor the power to avoid a lien on property to the extent that the lien impairs an exemption to which the debtor would have been entitled under § 522(b).

Debtors' motion to avoid the lien securing the Mercedes is denied. Debtors are hereby ordered to turn over the Mercedes to Petro Bank, N.A.

■ Finally, in their pursuit of alternative grounds for recovery, the debtors mistakenly argue that Petro Bank's security interest in the collateral should be voided because the security agreement between Petro Bank and the debtors violates Article 5069–7.07(3) of the Texas Consumer Credit Code by allowing the security holder to enter upon the buyer's premises unlawfully or to commit a breach of the peace in the repossession of the motor vehicle.[7]

Contrary to the debtors' assertions,[8] the security agreement provisions pertaining to Petro Bank's rights upon default do not authorize a trespass onto the debtor's property. In fact, the contract makes absolutely no mention of Petro Bank's right of entry onto the debtor's premises for the purpose of repossession upon default.[9] The agreement in no way "authorizes the seller to enter upon the buyer's premises unlawfully," in violation of Article 5069–7.-07(3).

Debtors' motion to void the contract under Article 5069–7.07(3) of the Texas Consumer Credit Code is denied.

It is so ordered.

Let judgment enter accordingly.

---

not be avoided. One statute permitted Louisiana to opt out of the § 522(d) federal exemptions (state law controlled in the avoidance of liens); the other statute stated that household goods and furnishings subject to a chattel mortgage were not exempt property.

7. Tex.Rev.Civ.Stat.Ann. art. 5069–7.07(3) (Vernon 1984).

8. The debtors claim the security agreement at bar includes the clause: "you can repossess the collateral if I fail to make any of my payments on time or if I fail to perform any of my obligations under this agreement. I will deliver the collateral to you at any reasonable time and place you designate, or you can peacefully enter the place where the collateral is kept and remove it." When asked to show the Court where

such a provision in the security agreement could be found, debtor's counsel could not.

9. The security agreement carefully avoids going beyond the legal rights provided under Texas Uniform Commercial Code § 9.503 which could subject it to claims under Art. 5069–7.07(3) as attempted by the debtor here.

Unlike the case relied upon by the debtor, *Gonzales v. Gainans Chevrolet City,* 690 S.W.2d 885 (Tex.1985), the security agreement at bar contains no provision on entry by a creditor for the purpose of repossession upon default. The pertinent clause in *Gonzales* stated, "[S]eller may enter upon the premises where said property may be and remove same." *Id.* at 888. There, the court found such language to authorize an unlawful entry to the debtor's property in violation of Art. 5069–7.07(3).